ABIGAIL FAY JEWETT, administratrix, *vs.* ALBERT GEIGER & others.

ALBERT GEIGER *vs.* ABIGAIL FAY JEWETT.

Suffolk.   March 13, 1928. — May 25, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Bills and Notes*, Holder in due course, Collateral. *Conversion. Pledge. Evidence*, Competency.

A promissory note was secured by a pledge of certain shares of stock which stood in the maker's name by transference from a third person. The third person subsequently made a note payable to the maker of the first note, who, after the death of the payee of the first note, indorsed it to his "estate . . . or order." The administratrix of the estate brought an action on the second note against the maker thereof, at the trial of which it appeared that, at the time that note was given, the payee thereof, the maker of the first note, without the plaintiff's knowledge, agreed with the defendant that, when the second note was paid, he would return to the defendant's wife the shares of stock which he had received from the defendant and had pledged on the first note, describing them as "held in my name as collateral security for this note." Subsequently, the plaintiff sold some of the shares to satisfy the first note. The judge excluded evidence offered by the defendant in substance to the effect that the plaintiff did not apply the proceeds of the sale of the shares to the second note; and ordered a verdict for the plaintiff. *Held*, that

(1) The two notes were distinct, and the proceeds of the sale of the shares were to be applied on the first note;

(2) The plaintiff was a holder in due course of the second note;

(3) The evidence offered by the defendant properly was excluded;

(4) The verdict properly was ordered for the plaintiff.

With the action above described was tried an action of tort by the defendant in that action against the plaintiff individually for conversion of the shares of stock sold. The power of sale contained in the first note provided that, upon default, the holder might sell the shares without notice at public auction, and might purchase at the sale. The defendant sold the shares at public auction, where they were bid in for his benefit. The judge excluded evidence to show that the defendant did

not give the plaintiff notice of the sale, and that the defendant's agent knew that some of the shares belonged to the plaintiff; and ordered a verdict for the defendant. *Held*, that

(1) The shares standing in the name of the pledgor, it was immaterial whether the defendant knew that the pledgor was not the beneficial owner of a portion of them;

(2) The sale was valid;

(3) The verdict properly was ordered for the defendant.

CONTRACT, by the administratrix of the estate of George F. Jewett upon a promissory note described in the opinion. Writ dated September 17, 1926. Also, an action of

TORT, by one of the defendants in the first action against the plaintiff in that action individually. Writ dated March 19, 1927.

In the Superior Court, the actions were tried together before *Flynn*, J. Material evidence is set forth in the opinion. The judge excluded certain evidence offered by the defendants in the first action in substance to show that the proceeds of the sale of certain shares of stock pledged as collateral to the note of March 26, 1926, were not applied by the plaintiff on the note in suit, and that the defendants did not have notice of the sale. In the second action the trial judge excluded evidence that MacGill knew that some of the shares belonged to Avery and that Avery told him that the rest belonged to the plaintiff. At the close of the evidence, the judge ordered a verdict for the plaintiff in the first action in the sum of $18,529.40, and for the defendant in the second action. The defendants Albert and Gertrude Geiger alleged exceptions in the first action, and the plaintiff alleged exceptions in the second action.

*J. S. McCann*, for Geiger and another.

*H. W. Beal*, (*R. Donovan* with him,) for Jewett.

BRALEY, J. The first of these actions, which were tried together, is on a promissory note for $17,500 dated May 5, 1926, signed by Albert Geiger, Jr. as maker and indorsed by Gertrude R. Geiger his wife. It was payable sixty days from date to the order of John C. Avery, who made this indorsement on the back of the note, "Pay to Estate of George F. Jewett or order." The declaration alleged that Gertrude R. Geiger indorsed the note before delivery for the accommodation of her husband, and that the plaintiff became the

holder before maturity, and that due notice of nonpayment was given. The defendants' answer is a general denial with averments that the note was given by Albert Geiger with certain shares of common and preferred stock of the R. H. Booth Sales Company to one John C. Avery on account of commissions arising from the sale of stock, and that said stock was made subject to a "side agreement" between the defendant Albert Geiger and Avery, whereby Avery was to proceed with the sale of the stock until the note should be liquidated, but that Avery failed and neglected to sell the stock and to liquidate the note which he has since transferred in violation of the agreement. It is further averred that the plaintiff took the note "either with knowledge or under such circumstances as to charge her with knowledge of said agreement," and that owing to the failure of Avery to sell the stock promptly and to liquidate the note the stock has fallen greatly in value. The defendants ask that they may be permitted to recoup "any damage by reason thereof." The defendants did not deny their signatures and the plaintiff introduced the note and rested.

It appeared in the uncontradicted evidence of one MacGill, a witness called by the defendants, that protest was duly made, and that MacGill handled a number of financial matters for his father-in-law, George F. Jewett, who lent the money, and upon his death April 25, 1926, MacGill continued to act for the estate of the decedent of which the plaintiff, his widow, is administratrix. The defendants however at the trial called for and offered in evidence a prior note held by the plaintiff for $19,840, dated March 26, 1926, and payable to George F. Jewett or order, which Avery as maker had given to Jewett. The payment of this note was secured by a pledge by Avery of certificates of the common and preferred stock of the R. H. Booth Sales Company, and on May 5, 1926, Avery wrote Geiger that when the note "you have given me this day for $17,500 . . . is paid I hereby agree to turn over to Mrs. Geiger the 311 shares of preferred stock and 236 shares of common stock of the R. H. Booth Sales Co., being the amount of shares held in my name as collateral security for this note." It does not appear that MacGill knew of this ar-

rangement. The financial condition of the Booth Company appeared to MacGill to be so uncertain that he notified Avery, that unless the note was paid at maturity the collateral security would be sold as he was anxious about the matter because of Jewett's death, as well as the necessity of the settlement of the estate. And on February 9, 1927, MacGill, who held the note in suit for $17,500, sold some of the collateral listed in the note for $19,840.

It is plain on the evidence put in by the defendants that the note for $19,840 and the note for $17,500 were distinct, and that the proceeds of the sale of the stock held as security on the prior note for $19,840 were to be applied on that note. The plaintiff therefore was a holder in due course, and, the various offers of proof of the defendants relating to the pledged stock as being applicable to the note declared on having been properly excluded, the verdict for the plaintiff was rightly ordered. G. L. c. 107, § 75. *Merchants National Bank* v. *Marden, Orth & Hastings Co.* 234 Mass. 161.

The second case is in tort for the conversion by the defendant individually of two hundred eight shares of the common stock, and three hundred eleven shares of the preferred stock of the R. H. Booth Sales Company pledged by Avery on the note for $19,840. It was wholly immaterial whether Avery told MacGill how much of the stock pledged was Avery's stock, and that MacGill knew that Avery owned only fifty shares. The certificates were in Avery's name by transference from Geiger, who knew that the pledge was to be made in order to obtain the loan. The power of sale contained in the note provides that, upon default, the holder may sell without notice the stock at public auction, and may purchase at such sale. The sale at public auction February 9, 1927, when the stock was bid in for the benefit of the estate at five cents a share, which now holds it, was valid. *Jennings* v. *Wyzansici*, 188 Mass. 285. *Eddy* v. *Fogg*, 192 Mass. 543, 546. The plaintiff failed to offer any admissible evidence showing a conversion of the stock, and the verdict for the defendant Abigail·Fay Jewett was directed rightly.

The entry in each case must be,

*Exceptions overruled.*